**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X
**JEFFREY PARKER,** on behalf of himself and all other persons similarly situated,

**Plaintiff,**

-v-

**TAILORED BRANDS, INC. d/b/a MEN'S WEARHOUSE and THE MEN'S WEARHOUSE, INC.,**

**Defendants.**
--------------------------------------------------------------X

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**
**DOCKET NO.**

Plaintiff JEFFREY PARKER ("Plaintiff" or "Mr. Parker"), on behalf of himself and all other persons similarly situated, by and through his undersigned counsel, as and for his putative class action complaint against Defendants TAILORED BRANDS, INC. d/b/a MEN'S WEARHOUSE and THE MEN'S WEARHOUSE, INC. (collectively, "Defendants," "Men's Wearhouse," or "Defendant"), hereby alleges as follows:

## INTRODUCTION

1. In a September 25, 2018, letter to United States Representative Ted Budd, the United States Department of Justice confirmed that places of public accommodation must make the websites they own, operate, or control equally accessible to individuals with disabilities.

2. Plaintiff Jeffrey Parker is a resident of Bronx, New York, and suffers from retinitis pigmentosa, a progressive retinal disease that has rendered him legally blind due to visual field limitation in his better eye of less than 20 degrees, as confirmed by his medical report signed by Claudette Lomonaco, O.D., dated November 12, 2025. Exhibit A

3. Mr. Parker is a proficient user of screen-reading software and keyboard navigation, which he relies upon daily to navigate digital environments independently because of his blindness.

4. Plaintiff brings this civil action against Defendants for their failure to design,

construct, maintain, and operate their highly interactive website, including www.menswearhouse.com, in a manner that is fully accessible to and independently usable by blind and visually impaired individuals.

5. Defendants' website serves not merely as a passive informational page, but as an integrated digital retail platform through which consumers may browse tailored clothing, review product information, compare merchandise, and make purchases online.

6. On September 9, 2025, September 17, 2025, and October 8, 2025, Plaintiff attempted to access www.menswearhouse.com using screen-reader software with the intent to browse, evaluate, compare, and purchase tailored menswear and formal clothing sold through Defendants' website.

7. Plaintiff's efforts focused on, among other things, the Men's Sport Coats & Blazers section, a Kenneth Cole Modern Fit Windowpane product page, and Joseph Abboud-branded menswear sold through Men's Wearhouse, all of which Plaintiff desired to evaluate and potentially purchase for personal and dress use.

8. Plaintiff chose Men's Wearhouse particularly because it is a nationally recognized menswear retailer that offers coordinated dress clothing, sport coats, suit separates, and branded formalwear in a single online retail environment, allowing consumers to compare styles, cuts, brands, and price points in one place before purchasing.

9. Plaintiff was drawn to the Men's Sport Coats & Blazers section because he was specifically looking for tailored jackets and sport coats suitable for dinners, family gatherings, religious events, and other occasions calling for more polished attire than casual clothing, and he wanted to evaluate the available styles, fabrics, and fits offered by Defendants.

10. Plaintiff was drawn to the Kenneth Cole Modern Fit Windowpane item because the product appeared to offer a contemporary patterned tailored look appropriate for dress occasions

and a modern professional wardrobe, and Plaintiff wished to review its appearance, fit information, and purchase options independently.

11. Plaintiff was also interested in Joseph Abboud-branded menswear sold through Men's Wearhouse because Joseph Abboud is marketed within Defendants' offerings as part of their dress-clothing selection, and Plaintiff wished to compare that brand's styling and presentation with other tailored options available on the website before deciding what to purchase.

12. Despite multiple attempts, Plaintiff was unable to independently complete his objectives due to persistent digital accessibility barriers that prevented him from discerning critical product information, navigating page content, understanding controls, comparing merchandise, and completing a purchase.

13. WAVE accessibility scans of the Men's Sport Coats & Blazers page and the Kenneth Cole Modern Fit Windowpane page revealed numerous accessibility errors consistent with the barriers Plaintiff encountered firsthand while attempting to browse and purchase products on the website. Exhibit B

14. Defendants' denial of full and equal access to blind and visually impaired consumers constitutes a violation of Plaintiff's rights under the Americans with Disabilities Act and New York law.

15. Plaintiff seeks a permanent injunction requiring Defendants to revise their corporate policies, practices, and procedures to ensure that their website becomes and remains accessible to blind and visually impaired users.

## JURISDICTION AND VENUE

16. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12182 because Plaintiff's claims arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182 et seq.

17. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims, including those arising under the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"), the New York State Civil Rights Law, N.Y. Civ. Rights Law § 40 and § 40-c ("NYCRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL").

18. Venue is proper in this District under 28 U.S.C. § 1391 because Defendants conduct substantial and continuous business in this District through their interactive website, including www.menswearhouse.com, and because Plaintiff accessed and attempted to use the website from Bronx, New York, within this District.

19. A substantial portion of the discriminatory conduct giving rise to this action occurred within this District because the access barriers were encountered by Plaintiff while he was located in New York.

20. Defendants participate in New York's economic life by clearly performing business over the Internet and offering apparel and related retail services to consumers in New York through www.menswearhouse.com.

21. Through their interactive website, Defendants entered into and solicited consumer transactions with residents of New York, including the browsing, selection, and sale of apparel and related merchandise.

**PARTIES**

22. Plaintiff Jeffrey Parker is a legally blind individual and resident of Bronx, New York.

23. Plaintiff suffers from retinitis pigmentosa and has visual field limitation in his better eye of less than 20 degrees, thereby meeting the definition of legal blindness.

24. To access the Internet, Plaintiff relies on screen-reading technology and keyboard navigation to independently perceive and interact with website content.

25. Defendant Tailored Brands, Inc. is the parent company identified as featuring Men's Wearhouse among its leading menswear retail brands.

26. Defendant The Men's Wearhouse, Inc. is the operating Men's Wearhouse entity and does business under the Men's Wearhouse name.

27. Upon information and belief, Defendants own, operate, control, maintain, and/or jointly provide the digital retail services offered through www.menswearhouse.com.

28. Defendants offer nationwide access to consumer apparel, suit separates, sport coats, formalwear, and related retail services through the Men's Wearhouse website, including to residents of New York.

## NATURE OF ACTION

29. This action arises under Title III of the ADA and New York law, challenging Defendants' operation of a public-facing website that denies blind and visually impaired individuals full and equal access to the goods, services, privileges, and advantages offered to the public.
30. The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, researching, comparing products, and making purchases.
31. In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen-access software that vocalizes visual content or renders it in accessible form.
32. This technology, commonly known as screen-reading software, is often the only practical means by which blind individuals can independently access the Internet.
33. Unless websites are properly coded to interface with screen-reading software, blind users are unable to fully access the information, products, and services offered online.

34. Users of Windows-enabled computers have access to several screen-reading programs, including NonVisual Desktop Access ("NVDA") and Job Access With Speech ("JAWS"), which are indispensable tools for blind users navigating the Internet.

35. Plaintiff is a blind, visually impaired individual and is therefore a member of a protected class under the ADA and New York anti-discrimination laws.

36. For screen-reading software to function properly, website content must be capable of being rendered into text so that buttons, images, forms, menus, and product information can be meaningfully announced to the user.

37. The World Wide Web Consortium has published the Web Content Accessibility Guidelines ("WCAG"), which are widely recognized as the appropriate benchmark for digital accessibility.

38. Non-compliant websites pose recurring barriers to blind and visually impaired users, including missing text equivalents for non-text elements, unlabeled buttons, inaccessible forms, broken ARIA references, empty links, and content that cannot be meaningfully interpreted by assistive technology.

## STATEMENT OF FACTS

39. Plaintiff Jeffrey Parker is a legally blind consumer residing in Bronx, New York.

40. Plaintiff relies on screen-reading software and keyboard navigation to access digital content and conduct online transactions independently.

41. On September 9, 2025, Plaintiff visited www.menswearhouse.com with the intent to browse the Men's Sport Coats & Blazers page in order to evaluate tailored outerwear and dress separates for personal and dress use.

42. Plaintiff selected that section because he was actively interested in purchasing a sport coat or blazer that he could wear to social dinners, family events, and other occasions requiring neat,

tailored attire, and because the category page was the logical starting point for comparing available options.

43. While attempting to navigate the Men's Sport Coats & Blazers page, Plaintiff encountered accessibility barriers that prevented him from independently discerning important content, categories, product details, and shopping pathways.

44. On September 17, 2025, Plaintiff returned to the website to access a Kenneth Cole Modern Fit Windowpane product page because he was interested in a modern, professional tailored garment suitable for dress occasions and wardrobe use.

45. Plaintiff desired that item specifically because its modern-fit windowpane presentation suggested a contemporary professional look, and Plaintiff wanted to review whether that garment's cut, style, and related purchase information matched what he was seeking for dress wear.

46. On that visit, Plaintiff was again unable to independently access material information necessary to understand the product page, including information tied to images, controls, navigation elements, and purchase-related functions, because of the barriers reflected in the WAVE scan for that page.

47. On October 8, 2025, Plaintiff returned once more to www.menswearhouse.com to revisit tailored clothing offerings, including Joseph Abboud-branded menswear sold through Men's Wearhouse, and to determine whether he could complete a purchase if the barriers previously encountered had been resolved.

48. Plaintiff was interested in Joseph Abboud-branded menswear because he wanted to compare that brand's styling with other dress options offered by Defendants and to assess whether a Joseph Abboud item better suited his preferences for tailored and occasion-appropriate clothing.

49. Plaintiff was unable to do so because the website continued to present barriers that interfered with screen-reader access, comprehension of information, and independent online shopping.

50. These barriers were not hypothetical. WAVE scans of the Men's Sport Coats & Blazers page and the Kenneth Cole Modern Fit Windowpane page revealed numerous accessibility errors, corroborating Plaintiff's firsthand experience.

51. Based upon the audits and Plaintiff's experience, the barriers included inaccessible or inadequately labeled elements, missing or insufficient text alternatives, coding failures that interfered with the communication of controls and content to screen-reader software, and other defects that prevented equal digital access.

52. These barriers prevented Plaintiff from discerning the information he desired about products, evaluating available options, navigating the website with confidence, and completing purchases independently without sighted assistance.

53. Defendants' website is not merely informational. It is a commercial retail platform through which consumers can browse products, obtain product-specific information, compare options, and attempt to purchase goods online.

54. Plaintiff specifically sought out Men's Wearhouse because it offered the sort of tailored menswear and dress apparel he desired to purchase, and because he wished to compare products and shop for those items online in the same independent manner available to sighted consumers.

55. Plaintiff remains highly motivated to return to www.menswearhouse.com once it is made accessible because he continues to desire the tailored menswear, sport coats, and suit-related products sold there.

56. Plaintiff intends to return to the website in the immediate future to purchase the products he previously sought, or similar tailored menswear products, as soon as Defendants remediate the barriers that presently deny him full and equal access.

## CLASS ACTION ALLEGATIONS

57. Plaintiff brings this action on behalf of himself and all other legally blind individuals in the United States who have attempted to access Defendants' website and were denied equal access to its goods and services due to persistent digital accessibility barriers during the relevant statutory period.

58. Plaintiff also seeks certification of a New York Subclass consisting of legally blind individuals residing in the State and City of New York who attempted to access Defendants' website and were similarly denied equal access because of the same systemic barriers.

59. Common questions of law and fact exist among the Class and Subclass, including, but not limited to, whether Defendants' website is inaccessible to blind users, whether the barriers violate Title III of the ADA and New York law, whether Defendants failed to provide equal access to their goods and services, and whether injunctive and declaratory relief is warranted.

60. Plaintiff's claims are typical of the claims of the Class and Subclass because, like all members, he is blind, relies on screen-reading technology, attempted to use Defendants' website, and encountered the same or similar barriers to equal access.

61. Plaintiff will fairly and adequately represent the interests of the Class and Subclass. He has no interests antagonistic to those of the members of the Class and Subclass and has retained counsel experienced in disability rights and complex litigation.

62. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class and Subclass, thereby

making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class and Subclass as a whole.

63. Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions predominate over individual issues and a class action is superior to individual litigation in resolving these claims efficiently.

## FIRST CAUSE OF ACTION

**Violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182 et seq.**

64. Plaintiff repeats and realleges each and every allegation of the preceding paragraphs as though fully set forth herein.

65. Section 302(a) of Title III of the ADA provides that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation.

66. Defendants' website is a service offered to the general public and must therefore be equally accessible to blind and visually impaired consumers.

67. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

68. Defendants have violated Title III of the ADA by maintaining a retail website with digital accessibility barriers that deny Plaintiff and similarly situated blind consumers full and equal access to the products and services available thereon.

69. Plaintiff is a member of a protected class under the ADA, and his blindness substantially limits the major life activity of sight.

70. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has been denied full and equal access to the website and the goods and services offered to sighted customers.

71. Defendants have failed to take prompt and equitable steps to remedy the discriminatory conduct, and the violations remain ongoing.

72. Unless Defendants are enjoined from continuing their discriminatory practices and compelled to bring the website into compliance with accessibility requirements, Plaintiff will continue to suffer irreparable harm.

**SECOND CAUSE OF ACTION**
**Violation of the New York State Human Rights Law**

73. Plaintiff repeats and realleges each and every allegation of the preceding paragraphs as though fully set forth herein.

74. At all relevant times, Defendants owned, operated, controlled, and/or maintained a place of public accommodation, including the subject website, within the meaning of the New York State Human Rights Law.

75. Plaintiff is an individual with a disability under the New York State Human Rights Law because of his blindness and substantial visual impairment.

76. Defendants have discriminated against Plaintiff and the Subclass by owning and operating a website that is inaccessible to blind individuals, failing to remove access barriers, and refusing to make the modifications necessary to afford facilities, privileges, advantages, and accommodations to individuals with disabilities.

77. This inaccessibility denies disabled individuals who are blind or visually impaired full and equal access to the facilities, goods, and services Defendants make available to non-disabled individuals.

78. As a result of Defendants' conduct, Plaintiff and the Subclass have suffered injury and are entitled to damages and injunctive relief to the fullest extent permitted by law.

**THIRD CAUSE OF ACTION**
**Violation of the New York State Civil Rights Law**

79. Plaintiff repeats and realleges each and every allegation of the preceding paragraphs as though fully set forth herein.

80. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodation subject only to the conditions and limitations established by law and applicable alike to all persons.

81. Defendant discriminates against Plaintiff and the Subclass because Defendants' website does not provide full and equal accommodations, advantages, facilities, and privileges to blind individuals.

82. Defendants intentionally and willfully failed to remove the barriers on their website and thereby discriminated against Plaintiff and the Subclass in violation of New York Civil Rights Law § 40 and § 40-c.

83. Plaintiff and the Subclass are entitled to statutory damages, penalties, and other relief available under New York law.

**FOURTH CAUSE OF ACTION**
**Violation of the New York City Human Rights Law**

84. Plaintiff repeats and realleges each and every allegation of the preceding paragraphs as though fully set forth herein.

85. Defendants are subject to the New York City Human Rights Law because they own and operate the website and offer goods and services to persons within New York City.

86. Defendants have refused to update or remove access barriers to the website, causing the website and the services integrated therein to be inaccessible to blind users.

87. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services Defendants make available to the non-disabled public.

88. Defendants' actions constitute willful and intentional discrimination against Plaintiff and the New York City Subclass based on disability in violation of the New York City Human Rights Law.

89. Unless this Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiff and members of the Class and Subclass will continue to suffer irreparable harm.

## FIFTH CAUSE OF ACTION
**Declaratory Relief**

90. Plaintiff repeats and realleges each and every allegation of the preceding paragraphs as though fully set forth herein.

91. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and upon information and belief Defendants deny, that the website contains access barriers denying blind customers full and equal access to the products, services, and facilities of the website.

92. A judicial declaration is necessary and appropriate so that the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and grant the following relief:

A. Certifying this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as representative of the Class and Subclass, and appointing Plaintiff's counsel as Class Counsel;

B. Declaring that Defendants' website violates Title III of the ADA, the New York State Human Rights Law, the New York State Civil Rights Law, and the New York City Human Rights Law;

C. Preliminarily and permanently enjoining Defendants from violating the ADA and New York law;

D. Requiring Defendants to take all steps necessary to make their website fully accessible to and independently usable by blind and visually impaired individuals;

E. Awarding compensatory damages, statutory damages, penalties, fines, punitive damages where available, and such other monetary relief as is permitted by law;

F. Awarding Plaintiff his costs, disbursements, and reasonable attorneys' fees to the fullest extent permitted by law;

G. Awarding pre-judgment and post-judgment interest;

H. Granting such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: New York, New York
July 20, 2026

**JOSEPH & NORINSBERG, LLP**

Robert Schonfeld

Robert Schonfeld, Esq.
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Telephone No.: (212) 791-5396
rschonfeld@employeejustice.com